IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALTEC CAPITAL SERVICES, LLC d/b/a EQUIPMENT FINANCE PARTNERS, | § § § § | |
| Plaintiff, | § § § | Civil Action No. 3:11-CV-3409-D |
| VS. | § § | |
| WEIR BROS., INC., et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The lessor under a lease-purchase agreement moves for summary judgment in this suit against the lessee and guarantors following default and the voluntary return of the leased equipment. For the reasons that follow, the court grants the motion as to liability and as to most damages sought, and it denies the motion as to the attorney's fees component of the lessor's damages.

I

This suit arises from an agreement between plaintiff Altec Capital Services, LLC d/b/a Equipment Finance Partners ("Altec") and Weir Brothers, Inc. ("WBI") under which WBI leased for purchase three pieces of commercial equipment from Altec.[1] The parties originally

---

[1] In recounting the factual background, the court summarizes the evidence in the light most favorable to defendants as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, L.L.C.*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

executed individual leases for the three pieces of equipment, and defendants Al Weir, Lee O. Weir, Mike L. Weir, Weir Equipment, Inc., Weir Transportation, Inc., and Weir Industries, Inc. each guaranteed payment of each lease. The parties later consolidated the leases into the single lease-purchase agreement (the "Agreement") that forms the basis for this suit. Under the Agreement, WBI is obligated to pay Altec monthly installments of $15,750.98 for a term of 60 months, which totals $945,058.80. At the end of the 60-month term, WBI has the option to purchase the equipment for one dollar.

The Agreement also specifies terms of default. It provides that an "Event of Default" occurs, *inter alia*, when "Lessee shall fail to pay when due any installment of interim rent or basic rent," or when "an event of default shall occur under any other obligation Lessee owes to lessor." Ds. App. 41. If WBI breaches the Agreement, Altec has the right "by written notice to Lessee, [to] terminate [the Agreement] and declare an amount equal to Lessor's Loss [(a variable liquidated damages amount specified in the Agreement)] as of the date of such notice to be immediately due and payable." *Id.* And upon early termination of the Agreement, WBI is obligated to "immediately deliver the Equipment to lessor in the same condition as when delivered to Lessee, ordinary wear and tear expected, at such location . . . as Lessor shall designate. Lessee shall pay all transportation and other expenses relating to such delivery." *Id.* When such repossession occurs, Altec can sell the equipment. "The proceeds of such sale . . . shall be applied to reimburse Lessor for Lessor's Loss and any additional amount due . . . . [and] Lessor shall be entitled to any surplus and Lessee shall remain liable for deficiency." *Id.* at 42.

WBI made the monthly installment payments from February through July 2011, but neither it nor the guarantors made further payments. Consequently, Altec gave notice of default and termination for nonpayment in September 2011, demanding the return of the equipment. Because WBI had not returned the equipment by October 2011, Altec sent WBI another letter stating that Altec had terminated the lease and demanding that WBI return the equipment. When Altec did not promptly return the equipment, Altec filed this lawsuit, and the court issued a writ of sequestration. Before the writ could be executed, the parties agreed that WBI would directly turn over the equipment, at its own expense, to Altec's facility. On Altec's agreed motion, the court approved the direct delivery.

Altec now moves for summary judgment on liability and damages, including attorney's fees.

II

Because Altec will bear the burden of proof at trial on its breach of contract claim, to obtain summary judgment it "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F.Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that Altec must demonstrate that there are no genuine and material fact disputes, and that it is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v.*

*St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

The court first addresses liability. Under Alabama law,[2] the elements of a breach of contract claim are: "(1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009) (quoting *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002)).

Altec has adduced evidence in support of each element of its claim. The face of the Agreement establishes the elements of a valid contract—"an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer*, 29 So.3d at 880 (internal quotation omitted). Altec performed by providing WBI the equipment as called for by the terms of the Agreement, WBI and the guarantor-defendants failed to perform their obligations when they did not make the monthly payment after WBI failed to do so. As a result of this nonperformance, Altec suffered damages. Altec has

---

[2]The Agreement states that "in all respects [it shall] be governed by, and construed in accordance with, the substantive law of the state where Lessor or Secured Party, whatever the case may be, maintains its principal place of business." P. App. 42. Altec's principal place of business is in Alabama. The Agreement is therefore governed by Alabama law. *See Int'l Interests, L.P. v. Hardy*, 448 F.3d 303, 306-07(5th Cir. 2006) (stating that "[i]n diversity cases, a federal court must follow the choice of law rules of the forum state," and that "[t]he Supreme Court of Texas has recognized that contractual choice of law provisions should generally be enforced." (citing *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004); *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990))).

therefore established each element of liability, and defendants do not contest Altec's liability claim. Accordingly, Altec has established beyond peradventure that WBI is liable for breaching the Agreement and that the guarantor-defendants are liable under their guaranties.

IV

Altec also moves for summary judgment establishing its damages.

A

Altec seeks summary judgment in the amount of $530,506.23.[3] This figure, Altec argues, is the sum of the Lessor's Loss, as specified in the Agreement, minus the amount it received from selling the equipment, plus its attorney's fees. The Lessor's Loss is equal to

> (1) the amount of all rent and other amounts payable by Lessee hereunder due but unpaid as of such date plus (2) the amount of all unpaid rent for the balance of the term of this lease not yet due as of such date discounted from the respective dates installment payments would be due at the rate of 4% per annum plus (3) the dollar amount specified in either the "Purchase Option" or the "Purchase Agreement" box on the . . . first page of this lease.

P. App. 41. Altec calculates that the Lessor's Loss is $801,149.92: element (1) is the contractual monthly lease payment of $15,750.98 multiplied by the nine months that WBI possessed the equipment, for a total of $141,758.82; element (2) equals the remaining 45 monthly lease installments not yet due when the equipment was returned (60-month term less six payments and nine missed payments before delivering the equipment to Altec) and

---

[3]In Altec's motion, it requested the sum of $557,453.65 in damages, but in its reply brief Altec abandons its claim for unpaid property taxes in the sum of $26,947.42, resulting in a reduced request of $530,506.23.

discounted by 4% per annum, which equals $659,390.10; and element (3) is the $1 purchase option. Altec has introduced evidence that it received $349,763.71 from selling the equipment at public auction. Finally, Altec maintains that, in accordance with the Agreement, it is entitled to recover attorney's fees and other expenses—which the court will refer to as "attorney's fees"—in the sum of $79,120.02.[4] The net total sum is $530,506.23.

B

Defendants contest Altec's Lessor's Loss calculation in two respects.

1

First, defendants argue that it was improper for Altec to discount the amount of the unpaid lease payments for the portion of the lease term after WBI delivered the equipment (May 2012-January 2015) but not to discount the amount of the unpaid lease payments for months after Altec's September 1, 2011 notice of termination and demand that WBI return the equipment (September 2011-April 2012). Applying this method would reduce the Lessor's Loss to $783,307.97, a reduction of $17,841.95 from Altec's calculation.[5] Altec replies that the discount should not apply until after WBI delivered the equipment, because each time WBI failed to make a payment while in possession constituted an independent event of default, and the remedy for this default is defined by the Lessor's Loss provision on

---

[4]Altec requests leave to update this figure, if necessary.

[5]Defendants' motion calculates the Lessor's Loss to be $769,921.24, but this is incorrect because it omits the final payment in January 2015, which is discounted to $13,386.10.

the date of default. Altec also argues that applying a discount to the period before WBI delivered the equipment would be a windfall to defendants that rewarded WBI's noncompliance with Altec's delivery demand.

The court holds that the discount provision took effect in September 2011, despite WBI's continued possession of the equipment, because Altec unambiguously terminated the Agreement on September 1, 2011. Each interpretation of the Agreement that Altec offers to justify deferring commencement of the discount date until May 2012 is strained. The clause that provides that the Lessor's Loss is calculated "as of any date" is most naturally read as making clear that, regardless when in the lease term a default occurs, Altec can accelerate the rent. Further, the requirement that WBI return the equipment immediately upon early termination is most naturally read to provide instructions as to what to do with the equipment and the physical condition in which it is to be returned, not as an extension of the contractual terms to which the liquidated damages provision applies. Because Altec elected to terminate the contract in September 2011, it cannot assert that the damages provision of that same contract should be calculated as of April 2012.

Altec has therefore established beyond peradventure that the Lessor's Loss equals $783,307.97.[6]

---

[6]Although the denial in part of Altec's summary judgment motion would not normally preclude Altec from seeking the same relief at trial, given the court's reasoning, the result following trial would be the same.

2

Second, defendants contend that the present value analysis applied in the second element of Lessor's Loss should also apply to the proceeds from the sale of the equipment. They argue that it was improper for Altec to subtract the full net amount of proceeds from the sale ($349,763.71) from the Lessor's Loss without discounting it by 4% per annum to account for the fact that the money was received 41 months before the Agreement was scheduled to expire.[7] Altec replies that defendants' proposed calculation is contrary both to the contractual language and the purpose of present value discounting.

The court agrees with Altec that there is no reason stated in the Agreement, nor principle of discounting, to discount the amount of the net proceeds from the sale of the equipment. The Lessor's Loss calculation states that, in calculating damages, the parties must discount by 4% per annum the lease payments owed but not yet due. Defendants do not point to a single provision in the Agreement that indicates that this or any other discount applies to the proceeds of the sale of repossessed equipment. Furthermore, present value analysis is used to ensure that a party is not overcompensated given the time-value of money. That is, it takes into account that, because of inflation and the ability to invest, the value of money obtained at a specific date is generally more valuable than that same nominal amount of money obtained at a future date. As a result, a lessor is required by Alabama law "to

---

[7]Because the sale price functions as a reduction against the Lessor's Loss, the court assumes that defendants argue not that the sale amount should be discounted, but that it should be increased by the discount rate so that defendants would receive a greater, not lesser, credit against the amount of the Lessor's Loss.

reduce to present value any amount of rent recovered that would have been due at a future time." *HealthSouth Rehab. Corp. v. Falcon Mgmt. Co.*, 799 So.2d 177, 185 (Ala. 2001). The proceeds from selling the equipment were not due, however, at some future date such that they must be discounted to their present value. Rather, the proceeds from a sale are used to offset the damages Altec faced at the time of the breach. *See* P. App. 42. Therefore, there is no reason to discount the proceeds from selling the equipment; the proper offset to be applied against the Lessor's Loss is the sum of $349,763.71.

C

Defendants also contend that Altec failed to mitigate its damages.[8] The court concludes that defendants are precluded from defeating summary judgment based on this affirmative defense.

Mitigation of damages is an affirmative defense on which defendants will have the burden of proof at trial. *Prudential Ballard Realty Co. v. Weatherly*, 792 So.2d 1045, 1048 (Ala. 2000). They must therefore affirmatively plead the defense. *See* Fed. R. Civ. P. 8; *see*

---

[8]Defendants maintain that Altec failed to mitigate damages by requiring WBI to deliver the equipment to Altec's facility without first reconditioning it, and then paying for reconditioning and for transport from Altec's facility to Richie Brothers, where the equipment was sold at auction. Defendants contend that it would have been cheaper for WBI to recondition the equipment before returning it to Altec, and for WBI to transport the equipment directly to Richie Brothers. Defendants also argue that Altec improperly failed to sell the equipment at the May 8, 2012 auction, and unnecessarily delayed the sale until the July 25, 2012 auction, which resulted in a reduced sale price of between 10% and 15%. Altec replies that WBI was required by contract to return the equipment immediately to a facility of its choice at defendants' expense. And given that WBI failed to return the equipment for a period of months, it was not reasonable for Altec to employ WBI as its agent to make the equipment ready for sale and transport it to the auction site.

*also Prudential*, 792 So.2d at 1048.  But here, defendants did not plead mitigation of damages as an affirmative defense in their answer or in any other pleading.  Although such a defense is not waived simply by failing to assert it at the proper time, *see Lucas v. United States*, 807 F.2d 414, 417 (5th Cir. 1986), and although Altec does not argue that raising the defense now is improper, it is well established that a party cannot defeat summary judgment based on claims that have not been asserted as of the time the motion was filed.  *See, e.g., El Sereno, LLC v. City of Garland*, 2010 WL1741334, at *1 (N.D. Tex. Apr. 29, 2010) (Fitzwater, C.J.) (citing *Days Inn Worldwide, Inc. v. Sonia Invs.*, 2006 WL 3103912, at *20 (N.D. Tex. Nov. 2, 2006) (Fitzwater, J.)).  This rule applies equally to affirmative defenses that have not been properly raised but that are relied on to defeat summary judgment.

The court therefore holds that defendants cannot avoid summary judgment as to damages that they maintain Altec should have mitigated.

V

The court now considers Altec's request for attorney's fees.  Defendants do not challenge Altec's right to recover fees; they do contest the amount of the fees on several grounds.

A

"The award of attorneys' fees is governed by the law of the state whose substantive law is applied to the underlying claims." *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005) (quoting *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000)).  Under Alabama law, "[t]he determination of whether an attorney fee is

reasonable is within the sound discretion of the trial court." *State Bd. of Educ. v. Waldrop*, 840 So.2d 893, 896 (Ala. 2002); *City of Birmingham v. Horn*, 810 So.2d 667, 681-82 (Ala. 2001). To determine the reasonableness of requested attorney's fees, the court considers 12 criteria:

> [(1)] [t]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Kiker v. Probate Court of Mobile Cnty.*, 67 So.3d 865, 867 (Ala. 2010) (quoting *Pharmacia Corp. v. McGowan*, 915 So.2d 549, 552-53 (Ala. 2004)). "These criteria are for the purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met." *Id.* at 867-68 (quoting *Pharmacia*, 915 So.2d at 553). "When an applicant for attorney fees 'has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled.'" *Ex parte Edwards*, 601 So.2d 82, 85 (Ala. 1992) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Thus reasonableness is the touchstone of the inquiry in Alabama. Some federal courts have therefore used federal attorney's fee concepts when applying Alabama law to help determine whether a fee is reasonable. *See W. Sur. Co. v. Bradford Elec. Co.*, 483 F.Supp.2d 1114, 1121 (N.D. Ala. 2007) ("consider[ing] the basic

- 11 -

caveats set forth by the Eleventh Circuit for reasonableness of attorneys fees, such as that time billed must not be excessive, redundant, or otherwise unnecessary") (internal quotation marks omitted); *SE Prop. Holdings, LLC v. 135, LLC*, 2012 WL 6681784, at *5 (S.D. Ala. Dec. 21, 2012) (citing cases applying federal law to determine that clerical or secretarial work is not recoverable).

B

The court holds that Altec is not entitled to summary judgment on the attorney's fees component of its damages claim. Because Altec will have the burden of proof at trial on damages, it must meet the heavy beyond peradventure standard. This means that Altec must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law on the amount of attorney's fees it seeks. It has not met this burden as to all aspects of its attorney's fees claim, meaning that the court must decide the amount of the award at trial as trier of fact, rather than at the summary judgment stage as a matter of law.[9]

Because under Alabama law the determination of attorney's fees is a matter within the sound discretion of the trial court, the trial can be conducted on written submissions, if the

---

[9]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

parties agree.[10] If the parties do submit the attorney's fees component for decision on written submissions, the court notes that at least the following defects in their present briefing must be addressed.[11]

Defendants, as the objecting parties, must be more specific in objecting to Altec's fee requests. Some of their objections—e.g., that there is "substantial duplication and layering of review tasks and other redundancies in the work . . [that] are readily evident from [Altec's] exhibits," Ds. Resp. 6—are conclusory and therefore insufficient. *See Horton Homes, Inc. v. Brooks*, 832 So.2d 44, 54 (Ala. 2001) (holding in context of statute providing for recovery of attorney's fees that party contesting fees has "burden of objecting to specific items or charges for amounts for work that it considered improper").

For its part, Altec must demonstrate, *inter alia*, that it exercised billing judgment. Under Alabama law, it is appropriate to reduce the recoverable fees because a party has not exercised billing judgment. *See Wells Fargo v. Centerline, Inc.*, 2011 WL 5444108, at *1 (S.D. Ala. Nov. 9, 2011) (applying Alabama law, but citing federal law, and holding that court must exercise billing judgment if party seeking fees fails to do so). Although defendants advance only a conclusory objection that Altec failed to exercise billing judgment, this failure can be inferred from Altec's summary judgment briefing and evidence.

---

[10]Absent agreement, the court can conduct this rather short trial during the current two-week setting that begins May 20, 2013.

[11]The court does not suggest that defendants' objections and Altec's fee application are not deficient in other respects. It is sufficient to provide these examples in denying summary judgment.

First, in its reply brief, Altec essentially says this: if billing judgment means writing off fees because they are unproductive, excessive, or redundant and therefore would be unreasonable to bill to the client, then the bills sent to the client (Altec) reflect no such fees, and Altec only seeks to recover the fees billed by its attorneys. *See* P. Reply Br. 15 ("Therefore, it is hardly surprising that Altec's fee bills fail to reflect such amounts."). In other words, Altec does not specifically show that its attorneys exercised billing judgment; it just says that the bills it receives are necessarily the product of billing judgment and it is only those fees that it seeks to recover. But at least under federal procedure, the fee applicant must document the hours written off in the exercise of billing judgment. *See, e.g., Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) ("Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant."). It is not enough for the fee applicant merely to say that the fees charged by its attorneys necessarily reflect the exercise of billing judgment.

Second, the one fee entry that Altec explicitly points to as reflecting the exercise of billing judgment is the 9/27/12 entry for 0.4 hours described as "Assemble and transmit Burr & Forman invoices to Southwick." P. App. 131; *see* P. Reply Br. 13-14. But because billing judgment involves writing off fees as unproductive, excessive, or redundant, it is doubtful that this could have been accomplished in 0.4 hours or that the attorney would have described this task as assembling and transmitting invoices.

Third, the attorney declarations in the summary judgment record do not affirmatively state that any billing judgment was exercised. *See* P. App. 70-75; 114-19.

Accordingly, the court denies Altec's motion to the extent it seeks summary judgment for damages consisting of attorney's fees. This element remains to be tried in court or on written submissions.[12]

\* \* \*

For the reasons explained, the court grants Altec's October 31, 2012 motion for summary judgment as to liability and as to most of the damages it seeks, and it denies the motion as to the attorney's fees component of Altec's damages.

**SO ORDERED.**

March 8, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[12]Another alternative is for the parties to reach agreement as to the amount of this part of Altec's damages, thereby reducing delay for Altec in obtaining and executing on the final judgment, and avoiding the costs to defendants of additional attorney's fees incurred to their own attorney and incurred by Altec's counsel (and shifted to defendants) in litigating the remaining aspects of the fee dispute.